IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CV-361-FL

| | | |
|---|---|---|
| H&E EQUIPMENT SERVICES, INC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| OAK CITY CONTRACTING, LLC, and DUSTIN CRITTENDEN, | ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on plaintiff's motion for default judgment. (DE 14). Defendants failed to respond, and the time for doing so has elapsed. In this posture, the issues raised are ripe for ruling. For the following reasons, plaintiff's motion for default judgment is granted in part and denied in part.

**STATEMENT OF THE CASE**

Plaintiff commenced this action August 20, 2019, by filing verified complaint. Plaintiff asserts a breach of contract claim, and alternatively claims of quantum meruit and unjust enrichment, arising from plaintiff's provision of commercial construction equipment and related services. Proceeding on the basis of diversity jurisdiction, plaintiff seeks damages of $314,734.71,[1] as well as prejudgment and post-judgment interest, costs, expenses, and attorneys' fees.

---

[1] Although plaintiff originally alleged damages of $384,290.32 in its complaint, plaintiff reduced the amount after receiving partial payment of $69,555.61 from nonparties on October 1, 2019. (See Phair Aff. (DE 15) ¶ 10).

On November 19, 2019, the clerk entered default against defendants upon their failure to answer. Plaintiff filed the instant motion for default judgment December 12, 2019, relying upon 1) an affidavit of Jennifer Phair ("Phair"), plaintiff's regional credit manager; 2) Application for Credit and Contract ("the application") executed by defendants;[2] 3) receipt of filing fee; 4) two invoices from process servers; and 5) affidavit of attorney Jason R. Harris ("Harris"), regarding the amount of attorneys' fees incurred.

### STATEMENT OF FACTS

The facts alleged in the complaint and accepted as true upon consideration of default judgment may be summarized as follows. Plaintiff is a Delaware corporation in the business of renting, selling, and servicing commercial construction equipment. (Pl. Compl. (DE 1) ¶¶ 3,7). Defendant Dustin Crittenden ("Crittenden") is the managing member of defendant Oak City Contracting, LLC ("Oak City"), a North Carolina limited liability company. (Id. ¶¶ 4—5).

In or about December 2015, defendant Oak City executed the application and opened an account with plaintiff for the purchase of commercial construction equipment and related services. (Id. ¶ 8). According to the application, defendants planned to make an "estimated monthly purchase" of $25,000 or more. (Ex. 1 (DE 1-1) at 2; Ex. A (DE 16-1) at 5).[3] Moreover, the application provides "balances beyond 30 days will be subject to a one and one-half percent (1.5%) finance or interest charge per month (18% per annum) or the highest rate allowable by law." (Id.). Finally, the application states that the "[a]pplicant shall be liable for all costs and fees, including

---

[2] Upon receipt of this filing, the court ordered plaintiff to resubmit a legible copy of the contract. Plaintiff complied January 21, 2020.

[3] Page numbers in citations to documents in the record specify the page number designated by the court's electronic case filing (ECF) system, and not the page number, if any, showing on the face of the underlying document.

attorney and/or collection agency fees and expenses, incurred in pursuit and/or collection of any amounts past due, including interest charges." (Id.).

Defendant Crittenden personally guaranteed defendant Oak City's account with plaintiff by executing the guarantee of indebtedness section of the application. (Ex. 1 (DE 1-1) at 4; Ex. A (DE 16-1) at 6). This section provides, "the undersigned Guarantor(s) . . . does unconditionally personally guarantee all sums which may be owed by application to H&E . . . including but not limited to the payment of all costs of collection and attorney's fees." Id.

Defendants received certain commercial goods and services from plaintiff, and despite demand by plaintiff, refused to pay amounts due under the application. (Pl. Compl. (DE 1) ¶ 10—11).

## COURT'S DISCUSSION

A.    Standard of Review

Once default has been entered pursuant to Federal Rule of Civil Procedure 55(a), Rule 55(b)(2) authorizes the court to enter default judgment against a properly served defendant who fails to file a timely, responsive pleading. Upon default, the defendant "admits the plaintiff's well-pleaded allegations of facts, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). However, "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." Id. Rather, the court must consider whether the unchallenged facts support the relief sought. Id.

If the court determines that liability is established, it then must determine the appropriate amount of damages. See Ryan, 253 F.3d at 780—81. Unlike allegations of fact, allegations of

damages are not deemed admitted upon default. See Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); see also Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true.").

To make an independent determination regarding damages, the court may conduct an evidentiary hearing under Rule 55(b)(2)(B), but such a hearing is not required if the damages are ascertainable from the pleadings. See Anderson v. Found. for Advancement, Educ. and Emp't of Am. Indians, 155 F.3d 500, 507 (4th Cir. 1998) ("[I]n some circumstances a district court entering a default judgment may award damages ascertainable from the pleadings without holding a hearing.").

B.  Analysis

    1.  Breach of Contract

As a threshold matter, the court's jurisdiction is based upon diversity of citizenship; therefore, the court must "apply the substantive law of the state in which it sits, including the state's choice of law rules." Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 599–600 (4th Cir. 2004) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79 (1938)). Applying North Carolina's choice of law rules, "the interpretation of a contract is governed by the law of the place where the contract was made." Tanglewood Land Co. v. Byrd, 299 N.C. 260, 262 (1980). Furthermore, a contract is made at the place where "the last act was done by either of the parties essential to a meeting of minds." Bundy v. Commercial Credit Co., 200 N.C. 511, 515 (1931). In this case, after completing the application, defendants mailed it to plaintiff's Raleigh, North

Carolina branch for acceptance. (See Ex. 1 (DE 1-1) at 2). Accordingly, contract was made in Raleigh, North Carolina, and North Carolina law governs plaintiff's breach of contract claim.

"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of [the] contract." Wells Fargo Ins. Serv. USA, Inc. v. Link, 372 N.C. 260, 276 (2019). Under the first element, a valid contract requires assent, mutuality, and definite terms. See Horton v. Humble Oil & Refining Co., 255 N.C. 675, 679 (1961). Moreover, mutuality, or "[m]utuality of promises means that promises, to be enforceable, must each impose a legal liability upon the promisor. Each promise then becomes a consideration for the other." Wellington-Sears & Co. v. Dize Awning & Tent Co., 196 N.C. 748, 751 (1929). Under the second element, failure to comply with duties imposed by contract terms constitutes breach. See Sale v. State Highway Comm'n, 242 N.C. 612, 619 (1955).

Here, plaintiff has sufficiently alleged a claim for breach of contract. The application attached to plaintiff's verified complaint evidences a valid contract with definite terms. Defendants' signatures therein establish their assent to those terms. Moreover, plaintiff's promise to provide goods and services in exchange for defendants' promises to pay satisfies the mutuality of promises requirement and consideration. Finally, by failing to pay plaintiff for the goods and services rendered, defendants failed to comply with the terms of the contact. Accordingly, the court finds that defendants breached their contract with plaintiff.

2. Damages

Having established defendants' liability as a matter of law, the court turns to plaintiff's assertion of damages. The court finds that it can ascertain damages based on the evidence in the record and dispenses with need for hearing. See Anderson, 155 F.3d at 507. Here, plaintiff alleges $314,734.71 in damages due to defendants' failure to pay for goods and services rendered. (Phair

Aff. (DE 15) ¶ 13). In support, plaintiff proffers the application and sworn affidavit from plaintiff's regional credit manager, Phair, attesting to the amount of damages. Moreover, the damages amount is reasonable, where the contract indicated defendants would make estimated monthly purchases of at least $25,000 and where the parties executed the contract approximately three years and eight months before plaintiff commenced this action.[4] (Ex. 1 (DE 1-1) at 2; Ex. A (DE 16-1) at 5). Accordingly, the court finds plaintiff sustained $314,734.71 in damages.

3. Quantum Meruit and Unjust Enrichment

Under North Carolina law, "[q]uantum meruit operates as an equitable remedy based upon a quasi contract or a contract implied in law which provides a measure of recovery for the reasonable value of services rendered in order to prevent unjust enrichment." Ron Medlin Constr. v. Harris, 364 N.C. 577, 580 (2010) (internal quotation omitted). "Quantum meruit is not an appropriate remedy when there is an actual agreement between the parties." Ron Medlin Constr., 364 N.C. at 580 (internal quotation omitted). Accordingly, having found that the parties entered into a valid contract, which defendants breached, the court denies plaintiff's claims for quantum meruit and unjust enrichment.

4. Attorneys' Fees

Plaintiff also seeks attorneys' fees. A federal court sitting in diversity applies state law when determining whether to award attorneys' fees. See Alyeska Pipeline Serv. Co. v. Wilderness Soc., 421 U.S. 240, 259 n.31 (1975). Under North Carolina law, "a successful litigant may not recover attorneys' fees, whether as costs or as an item of damages, unless such a recovery is expressly authorized by statute." Stillwell Enter. v. Interstate Equip. Co., 300 N.C. 286, 289

---

[4] The application was executed December 8, 2015, and plaintiff commenced this action August 20, 2019, approximately three years and eight months later. If defendants made monthly purchases of $25,000 for three years and eight months, they would have paid plaintiff $1,100,000.

(1980). Authorizing recovery of attorneys' fees in this context, N.C. Gen. Stat. § 6-21.2 provides, "[o]bligations to pay attorneys' fees" arising out of any "evidence of indebtedness" "shall be valid and enforceable." Regarding the amount of attorneys' fees recoverable, the statute states "[i]f such note, conditional sale contract or other evidence of indebtedness provides for the payment of reasonable attorneys' fees by the debtor, without specifying any specific percentage, such provision shall be construed to mean fifteen percent (15%) of the 'outstanding balance' owing on said note, contract or other evidence of indebtedness." N.C. Gen. Stat. § 6-21.2(2). Importantly, this statute also includes the following notice provision:

> [a party seeking attorneys' fees] shall, after maturity of the obligation by default or otherwise, notify . . . [the debtor] that the provisions relative to payment of attorneys' fees in addition to the "outstanding balance" shall be enforced and that such [debtor] has five days from the mailing of such notice to pay the "outstanding balance" without the attorneys' fees.

Id. § 6-21.2(5). Finally, N.C. Gen. Stat. § 6-21.2 does not authorize recovery of attorneys' fees against a guarantor of indebtedness unless the guaranty contract specifically provides for such recovery. See EAC Credit Corp. v. Wilson, 281 N.C. 140, 187 (1972).

Here, the application authorizes recovery of attorneys' fees by requiring defendant Oak City to pay "all costs and fees, including attorney and/or collection agency fees and expenses, incurred in pursuit and/or collection of any amounts past due." (Ex. 1 (DE 1-1) at 2; Ex. A (DE 16-1) at 5). Moreover, the guarantee of indebtedness section obligates defendant Crittenden to "guarantee all sums which may be owed by application to H&E . . . including but not limited to the payment of all costs of collection and attorney's fees." (Ex. 1 (DE 1-1) at 4; Ex. A (DE 16-1) at 6). Since the application does not specify the attorneys' fee percentage, Section 6-21.2(2) sets the rate at 15%, which is $47,210.20. In support this award, plaintiff proffers affidavit of Harris,

7

plaintiff's counsel, attesting that Harris charged plaintiff at least $47,210.20 in legal fees. (See Harris Aff. (DE 15-5) ¶ 4).

However, plaintiff fails to allege that it 1) provided the requisite notice of its intent to enforce the attorneys' fees provision and 2) allowed defendants five days to pay the outstanding balance without attorneys' fees, as required by N.C. Gen. Stat. § 6-21.2(5).[5] North Carolina courts "strictly construe[ ]" this requirement. In re Shangra-La, Inc., 167 F.3d 843, 851 (4th Cir. 1999); see also ITT-Industrial Credit Co. v. Hughes, 594 F.2d 384, 387 (4th Cir. 1979) ("[T]the federal courts have consistently required a strict compliance with state statutory notice provisions in connection with the attempted recovery of attorney's fees."). Indeed, merely filing a complaint seeking attorneys' fees does not satisfy N.C. Gen. Stat § 6-21.2(5). See ITT-Industrial Credit Co., 594 F.2d at 387 (filing a claim in bankruptcy does not satisfy the notice provision); Blanton v. Sisk, 70 N.C. App. 70, 75 (1984) ("[T]he serving of the complaint upon the defendants seeking to recover attorneys' fees does not satisfy the requirements of G.S. 6-21.2(5).").

However, there is no "time limit on filing the requisite notice." In re Shangra-La, Inc., 167 F.3d at 851. In fact, "notice may be given during the course of the proceedings." Id. (citing Binning's Inc. v. Roberts Constr. Co., 9 N.C. App. 569 (1970)). Therefore, the court denies plaintiff's request for attorneys' fees without prejudice, and allows plaintiff leave to file a motion to alter the judgment to reflect the addition of the requisite information for an award of attorneys' fees, within **28 days** from the date of this order.

5.      Costs

---

[5]     Plaintiff's complaint states "[d]espite demand by Plaintiff, Defendants have wrongfully refused to pay amounts due on the account in an amount presently totaling $384,290.32, exclusive of interest, costs, expenses and attorneys' fees." (Pl. Compl. (DE 1) ¶ 11). However, this allegation does not specify whether plaintiff's demand included notice of its intent to pursue attorneys' fees or whether the demand allowed defendants five days to pay the outstanding balance without attorneys' fees.

Plaintiff seeks a total of $625.00 in costs for the following expenses: 1) $400.00 for filing fee, 2) $150.00 for service of process, and 3) $75.00 for service of process. In support, plaintiff proffers two invoices from process servers, filing fee receipt, and the application, which provides "[a]pplicant shall be liable for all costs and fees, including attorney and/or collection agency fees and expenses, incurred in pursuit and/or collection of any amounts past due, including interest charges." (Ex. 1 (DE 1-1) at 2; Ex. A (DE 16-1) at 5).

Unlike attorneys' fees, "costs are assessed against the unsuccessful litigant as a matter of course." Flint v. Haynes, 651 F.2d 970, 973 (4th Cir. 1981). Indeed, Federal Rule of Civil Procedure 54(d)(1) provides in pertinent part, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Accordingly, where plaintiff attaches documentation for the expenses, plaintiff has demonstrated good cause for the taxation of costs, and the court awards plaintiff $625.00.

6. Interest

Plaintiff also seeks pre-judgment and post-judgment interest. According to the United States Court of Appeals for the Fourth Circuit, "state law applies to questions involving prejudgment interest in diversity cases." United States v. Dollar Rent A Car Sys. Inc., 712 F.2d 938, 940 (4th Cir. 1983). Turning to North Carolina law, pre-judgment interest is calculated from the date of breach, "at the rate of interest provided in the contract, or at the legal rate if the parties have not agreed on their own rate." Craftique, Inc. v. Stevens and Co., 321 N.C. 564, 569 (1988); N.C. Gen. Stat. § 24-5(a) ("In an action for breach of contract, except an action on a penal bond, the amount awarded on the contract bears interest from the date of breach."). Here, however, plaintiff fails to allege the date of defendants' breach. As such, the court cannot calculate pre-judgment interest, and plaintiff's request for such interest must be denied without prejudice. The

court allows plaintiff leave to file a motion to alter the judgment to reflect the addition of the requisite information for an award of pre-judgment interest, within **28 days** from the date of this order.

Post-judgment interest in diversity actions is calculated at the federal, rather than state, rate. Forest Sales Corp. v. Bedingfield, 881 F.2d 111, 113 (4th Cir. 1989). Here, plaintiff may recover post-judgment interest under 28 U.S.C. § 1961. See 28 U.S.C. § 1961 ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."). This statute provides, in pertinent part, "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding [sic] the date of the judgment." 28 U.S.C. § 1961(a).

## CONCLUSION

Based on the foregoing, plaintiffs' motion for default judgment (DE 14) is GRANTED IN PART and DENIED IN PART. The court GRANTS plaintiff's motion for default judgment (DE 14) as to plaintiff's breach of contract claim against defendants, and awards $314,734.71 in damages and $625.00 in costs. The clerk is DIRECTED to enter judgment for plaintiff in these amounts. Defendants are jointly and severally liable for the total amount of damages and costs. It is further ORDERED that post-judgment interest on amounts awarded shall accrue at the rate specified in 28 U.S.C. § 1961.

The court DENIES plaintiff's motion as to quantum meruit and unjust enrichment and DENIES WITHOUT PREJUDICE plaintiff's request for attorneys' fees and pre-judgment interest for reasons stated herein. The court allows plaintiff leave to file a motion to alter the judgment to

reflect the addition of attorneys' fees and pre-judgment interest, within **28 days** from the date of this order.

SO ORDERED, this the 25th day of March, 2020.

                                                          LOUISE W. FLANAGAN
                                                        United States District Judge